**FEDERAL ELECTION COMMISSION,**
**Plaintiff,**

v.

**Carolyn MALENICK, et al., Defendants.**

**No. CIV.A. 02–1237(JR).**

United States District Court,
District of Columbia.

March 30, 2004.

Erin Kathleen Monaghan, Office of General Counsel, Gregory John Mueller, Mark D. Shonkwiler, Stephen E. Hershkowitz, Federal Election Commission, Washington, DC, for Plaintiff.

Carolyn Malenick, Manassas, VA, pro se.

## MEMORANDUM ORDER

ROBERTSON, District Judge.

This is an enforcement action by the Federal Election Commission ("FEC" or "Commission") against Carolyn Malenick d/b/a Triad Management Services ["Triad"], Triad Management Services, Inc. ["Triad Inc."], and Carolyn Malenick, as corporate officer of Triad Inc.[1] In its complaint, the FEC alleges that the defendants violated various provisions of the Federal Election Campaign Act of 1971 ("FECA" or "Act"), as amended, 2 U.S.C. § 431 *et seq.* The FEC seeks declaratory and injunctive relief, as well as a civil penalty for each violation of the FECA that the defendants are found to have committed. Before the Court are the Commission's motion for summary judgment [# 16] and defendant Malenick's cross-motion for summary judgment [# 28].[2] For the reasons stated below, plaintiff's motion is **granted in part and denied in part**, and defendant's cross-motion is **denied**.[3]

### Background

On May 5, 1997, the FEC notified Malenick by letter that a complaint had been filed with the Commission, alleging violations of FECA by Triad. *See* Def. Mem., Ex. 126 (Letter from the FEC Supervisory Attorney Turley, to Malenick, dated May 5, 1997), at 1. The letter notified her of her rights under the FECA to "demonstrate in writing that no action should be taken ... in this matter." *Id.; see also* 2 U.S.C. § 437g(a)(1). On June 17, 1997, Malenick's counsel responded to the FEC that no further action by the Commission was warranted. *See* Def.'s Mem., Ex. 128 (Letter from E. Mark Braden, to FEC Chairman McGarry, dated June 17, 1997). After an investigation, the FEC notified counsel for Triad Inc. on June 8, 1998, that it had reason to believe the organization had violated 2 U.S.C. §§ 433, 434, 441a, 441b and 441f of the FECA during the 1995–1996 election cycle. *See Id.,* Ex. 167 (Letter from FEC Chairman Aikens, to E. Mark Braden, dated June 8, 1998), at 1. A similar letter addressed to Malenick on that same day notified her that the Commission had found reason to believe she had violated 2 U.S.C. §§ 441b and 441f of the FECA during the same election cycle.

1. Malenick began operating Triad as an unincorporated entity in January 1995 and incorporated it to form Triad Inc. in May 1996 (with Malenick as its president and sole shareholder). Thereafter, Triad Inc. assumed financial and operational responsibilities for those activities previously conducted by Triad. In a letter to the FEC's General Counsel's Office dated October 4, 2001, Malenick asserted that "Triad has been moribund and nonoperational for several years, and [that she] ha[s] no plans or intentions to revive Triad or engage in any similar business." Pl.'s Mem., Ex. 74, at 2. Plaintiff has not informed the Court of Triad Inc.'s current operational status and, for these purposes, the Court will assume that it is nonoperational.

2. Only defendant Malenick, *pro se,* has responded to the FEC's motion for summary judgment. However, summary judgment against Triad and Triad Inc. will only be granted if plaintiff, "the moving party[,] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c)

3. Malenick's cross-motion asserts that Triad Inc. was formed under the Internal Revenue Code and therefore is not a political action committee; that her civil rights have been violated by the FEC's own guidelines and administrative procedures; that the Court should limit the FEC as an independent agency and should call for an independent investigation of the FEC; and that the Court should assess damages sufficient to deter violations of rights by the FEC. Only the first of those assertions is addressed in this memorandum. The others are claims that have not been properly pleaded in this case. If cognizable at all, they would be counterclaims, but Malenick has filed no counterclaims, and, *pro se* or not, she may not do so constructively by raising them for the first time in a motion for summary judgment.

*See id.,* Ex. 167–A (Letter from FEC Chairman Aikens, to Malenick, dated June 8, 1998), at 1. Both letters were accompanied by detailed memoranda explaining the factual and legal bases for the FEC's findings.

On July 18, 2001, more than four years after Malenick was first notified of the filing of a complaint, the FEC advised all three defendants that its Office of General Counsel was "prepared to recommend that the Commission find probable cause to believe"[4] that the defendants had violated various FECA provisions. *Id.,* Ex. 220 (Letter from FEC Acting General Counsel Lerner, to E. Mark Braden, dated July 18, 2001), at 1. On October 4, 2001, Malenick responded on behalf of herself, Triad, and related entities, denying the allegations. *See* Pl.'s Mem., Ex. 74 (Letter to Mark Shonkwiler, from Malenick, dated October 4, 2001). On April 10, 2002, the Commission made its formal probable cause finding and informed the defendants that there would be a period for conciliation, after which the Commission could institute a civil suit in United States District Court. *See id.,* Ex. 87 (Letter from FEC General Counsel Norton, to Malenick, dated April 17, 2002). On June 13, 2002, after conciliation was unsuccessful, the Commission authorized its general counsel to institute this action. *See id.,* Ex. 88 (Letter from FEC General Counsel Norton, to Paul Sullivan (defendants' counsel), dated June 13, 2002).

The FEC filed the complaint on June 21, 2002.

## Analysis

The FEC has "exclusive jurisdiction with respect to the civil enforcement of [provisions of the FECA]," 2 U.S.C. § 437c(b)(1), and can "initiate (through civil actions for injunctive, declaratory, or other appropriate relief) ... any civil action in the name of the Commission to enforce the provisions of th[e] Act ... through its general counsel." *Id.* § 437d(a)(6). In civil actions instituted by the Commission, "the court may grant a permanent or temporary injunction, restraining order, or other order, including a civil penalty which does not exceed the greater of $5,000 or an amount equal to any contribution or expenditure involved in such violation, upon a proper showing that the person involved has committed, or is about to commit (if the relief sought is a permanent or temporary injunction or a restraining order), a violation of this Act ...." *Id.* § 437g(a)(6)(B).

Summary judgment will be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on a motion for summary judgment, the Court must draw all reasonable inferences in the nonmoving party's favor and accept the evidence of the nonmoving party as true. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, in proffering evidence to defeat a motion for summary judgment, the nonmoving party cannot simply rely on conclusory statements or allegations. *See Greene v. Dalton,* 164 F.3d 671, 675 (D.C.Cir.1999). Rather, the nonmoving party must come forward with specific facts that, when viewed in the context of the record as a whole, could reasonably lead a rational trier of fact to find for the

---

4. *Compare* (unfavorably) with Winston Churchill, November 10, 1942: "This is not the end. It is not even the beginning of the end. But it is, perhaps, the end of the beginning."

nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### 1. Whether Triad and Triad Inc. were "political committees"

■ A threshold question in this case—and the central question, really—is whether the FEC has established that Triad and Triad Inc. were "political committees" under the FECA. Organizations categorized as "political committees" must make certain detailed disclosures and file certain reports, and the failure of Triad and Triad Inc. to do so form the basis for most of the FEC's claims against the defendants. Under the Act, a "political committee" is, first of all,

> any committee, club, association, or other group of persons which receives contributions aggregating in excess of $1,000 during a calendar year or which makes expenditures aggregating in excess of $1,000 during a calendar year . . . .

2 U.S.C. § 431(4)(A). It is undisputed that Triad/Triad Inc. falls somewhere within the definitional language of "association, or other group of persons." [5] "Contribution[s]" are defined under the Act as "any gift, subscription, loan, advance, or deposit of money or anything of value made by any person for the purpose of influencing any election for Federal office . . . ." 2 U.S.C. § 431(8)(A)(i). "[A]n entity subject to regulation as a 'political committee' under the Act is one that is either 'under the control of a candidate or the major pur-

pose of which [sic] is the nomination or election of a candidate.' " *FEC v. Mass. Citizens for Life, Inc.*, 479 U.S. 238, 252 n. 6, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986) (quoting *Buckley v. Valeo*, 424 U.S. 1, 79, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976)); *but see Akins v. FEC*, 101 F.3d 731, 742 (D.C.Cir.1996) (*en banc*) ("We think the . . . Court clearly distinguished independent expenditures and contributions as to their constitutional significance, and its references to a 'major purpose' test seem to implicate only the former." (emphasis omitted)), *vacated on other grounds by* 524 U.S. 11, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998).

The FEC asserts that, "[b]ased on Triad's own statements and actions, it is clear that its major, if not sole, purpose during the 1996 election cycle was to support particular candidates for federal office both in Republican Party primaries and in the general election." Pl.'s Mem., at 20. Malenick disputes this assertion, arguing that Triad/Triad Inc. was a for-profit marketing company established to provide potential donors and clients "with sound advice prior to their [making] contributions [to charitable or political causes], much like a stockbroker," Defs.' Mem., at 15–16.

#### a. *Major purpose*

■ An "organization's purpose may be evidenced by its public statements of its purpose or by other means, such as its expenditures in cash or in kind to or for the benefit of a particular candidate or candidates," but "[c]ircuit precedent indicates . . . that even if the organization's

---

**5.** Under the Act, "[t]he term 'person' includes an individual, partnership, committee, association, corporation, labor organization, or any other organization or group of persons, but such term does not include the Federal Government or any authority of the Federal Government." 2 U.S.C. § 431(11). "An organization may incorporate . . . if the organization incorporates for liability purposes only, and if the organization is a political committee . . . . Notwithstanding the corporate status of the political committee, the treasurer of an incorporated political committee remains personally responsible for carrying out their respective duties under the Act." 11 C.F.R. § 114.12.

major purpose is the election of a federal candidate or candidates, the organization does not become a 'political committee' unless or until it makes expenditures in cash or in kind to support a 'person who has decided to become a candidate' for federal office." *FEC v. GOPAC, Inc.*, 917 F.Supp. 851, 859 (D.D.C.1996) (discussing *FEC v. Machinists Non–Partisan Political League*, 655 F.2d 380, 392 (D.C.Cir. 1981)).

Defendants have stipulated that Triad's announced "GOALS" for the 1996 election cycle were:

1) Return Republican House Freshmen;

2) Increase by 30 the Republican House Majority; [and]

3) Increase Senate Republicans to a Fil-ibuster-proof 60.

Pl.'s Mem., Ex. 1 (Stipulations of Fact signed and submitted by Malenick and Triad Inc., to the FEC on January 28, 2000) ("Triad.Stip."), at ¶ 2.1(b) (listing numerous 1995 and 1995 Triad materials announcing these goals); *see also, e.g., id.,* Ex. 58 (Triad Brochure) ("TRIAD has already put in place a team of political advisors and interested organizations, and is working on assembling a team of donors to work together in 1996 for the same goal: Retaining GOP control of Congress and the advance of a conservative issue agenda."), at FECTR000131; *id.,* Ex. 47 (Letter from Malenick, to Cone, dated Mar. 30, 1995) ("A major part of TRIAD's time in the next two years will be working with the 104th Congress Freshmen and targeting approximately 20 other Democratic held seats. Regardless of the GOP Presidential nominee, the focus must be on maintaining the House majority."), at Cone000037. In furtherance of these general goals, Triad and Triad Inc. sent approximately 60 "fax alerts" to approxi-mately 160 recipients during and after the primary and general election season in 1996. Triad Stip. ¶ 4.1. In these "fax alerts," Triad advocated for the election of specific federal candidates. *See, e.g.,* Pl.'s Mem, Ex. 4 (Fax Alert dated April 22, 1996) ("TRIAD Recommends Marvin Scott"); *id.* ("TRIAD Recommends Robert Wilkie"); *id.* ("TRIAD recommends Leroy Pittman"); *id.* (Fax Alert dated May 22, 1996) ("TRIAD recommends John Thune"); *id.* ("TRIAD Recommends Bob Riley"); *id.* ("TRIAD recommends Mike Pappas"); *id.* (Fax Alert dated August 2, 1996) ("TRIAD recommends Bob Schaffer"); *id.* (Fax Alert dated October 14, 1996) (attaching a list of twenty-six specific candidates and stating "Attached: List of ... campaigns that are in need of your support.").

The record contains the undisputed testimony of Robert Cone (*see infra*) that it "was the objective of the whole TRIAD concept to get major donors involved so that the ideally conservative candidates could be elected, and if those types of candidates with those types of views got into Congress there wouldn't necessarily be a need for heavy lobbying ... [because] they would be in sync with the values that we held." Pl.'s Mem., Ex. 94 ("Cone Dep."), at 418:11–19. Triad Inc. conducted detailed political audits of federal candidates, and compiled its findings in a book entitled *Expanding the Majority,* which was sent to more than 200 prospective donors. *See id.,* Ex. 99 ("Oliver Dep."), at 104:25–106:20. The purpose of sending out the book was "[t]o basically have in one place all the candidates that TRIAD recommended federal dollars, client federal dollars to, for the general election in 1996 so they could have it in one place." *Id.,* at 105:14–17; *see also* Triad Stip. ¶¶ 4.12–4.15.[6]

---

**6.** As a result of Triad's fax alerts, candidate

audits and *Expanding the Majority,* individu-

b.  *Contributions* [7]

The record establishes, and Malenick does not dispute, that Robert Cone was the primary source of funding for Triad and Triad Inc. in 1996, and that he provided both organizations with well over $1,000 in "gifts . . . or deposit[s] of money . . . for the purpose of influencing . . . election[s] for Federal office." 2 U.S.C. § 431(8)(A)(i).

"During 1996, [Triad] had financial receipts from Robert Cone totaling $465,500," Triad. Stip., at ¶ 7.2(a), and "[b]etween May 28 and December 31, 1996, Triad Inc.'s receipts included 10 financial transfers totaling $426,621 that were attributed to Robert Cone." *Id.*, at ¶ 7.3(a). Triad's 1996 Statement of Account lists Cone's 1996 financial transfers to Triad as amounting to $312,500 above, and lists Cone's 1996 transfers to Triad Inc. as amounting to $269,408.46 above, any services charged to Cone for that year. *See* Cone Dep., Ex. Cone000049–000052.

Moreover, Cone testified that he provided these funds "on an as go basis," *id.*, at 135:17, and that "[Malenick] kept [him] abreast of the cash flow requirements that she had, and [he] provided funding so that she could continue her work." *Id.*, at 185:20–22. Although Triad and Triad Inc. promoted itself in various materials as a for-profit business, the FEC has presented evidence that during the 1996 election cycle "client billing was basically nonexistent," Oliver Dep., at 95:25–96:1, and Cone testified that he listed his transfers to Triad in his personal records as "GI: Political Indirect," which he explained meant "gifts, and [that he] noted [it] as political indirect as compared to political direct, which would be hard dollars." Cone Dep., at 502:15–20. He further explained that he listed the transfers as gifts "[b]ecause it is not a taxable deduction[; i]t is a gift, something I would put in that is not a business investment." *Id.*, at 503:3–5. Cone testified that he did not have a signed consulting or other agreement concerning his financial relationship to Triad. *See id.*, at 142:9–15. On the basis of this undisputed evidence concerning Cone's financial transfers to Triad and Triad Inc., the Court concludes that the vast majority, if not the entirety, of Cone's financial transfers during this time were "contributions," within the meaning of the FECA aggregating in excess of $1,000 during the 1996 calendar year.[8]

---

als sent checks to Triad and Triad Inc., made payable to a federal candidate or authorized campaign committee, which were forwarded to the intended recipient. *See* Triad Stip. ¶¶ 4.16, 5.1–5.4 (stating that Triad forwarded approximately fifty personal checks, totaling approximately $43,000 and Triad Inc. forwarded approximately 180 checks, totaling $142,500, to intended federal candidate or campaign committees in 1995 and 1996).

7.  In addition to "contributions," the FEC has offered some evidence that Triad and Triad Inc. made "expenditures," *see* 2 U.S.C. § 431(4), in connection with its fax alerts and other publications advocating for individual federal candidates. But, these expenditures cannot be valued on this record. *See, e.g.*, Pl.'s Mem., at 46 ("The costs to Triad for these publications cannot be calculated with certainty on the current record.").

8.  I cannot find, on this record, that Cone made "contributions" in excess of $1,000 during the 1995 calendar year. At his deposition, Cone produced "a 1998 Triad Inc.-generated document entitled 'Statement of Account' [that] seem[s] to indicate that [Triad] and Triad Inc. charged him a set amount per month during 1995–1996" for arguably nonelection related services. Pl.'s Statement of Facts, at 81–82. And the 1995 account statement indicated that, at year's end, Cone owed Triad $22,500 for these services. *See* Cone Dep., Ex. Cone000048 (Triad 1995 Statement of Account) (listing Cone's year-end balance as $22,500 due for services rendered). While the FEC attempts to discount the validity of

#### c. *Political committee*

Accordingly, because Triad and then Triad Inc.'s major purpose was the nomination or election of specific candidates in 1996, and because Triad received contributions aggregating more than $1,000 in 1996, I find that Triad and Triad Inc. operated as a "political committee" in 1996.

### 2. Whether summary judgment is appropriate on plaintiff's causes of action

#### a. *Plaintiff has established that Triad and Triad Inc. violated 2 U.S.C. §§ 433 and 434 (Causes of Action I and II) (failure to register and report).*

A political committee "shall file a statement of organization within 10 days after becoming a political committee," 2 U.S.C. § 433(a), and "shall file reports of receipts and disbursements," *id.* § 434(a)(1), with the Commission in accordance with the provisions of these sections. It is undisputed that neither Triad nor Triad Inc. registered as a political committee or filed periodic reports with the FEC in 1996, as required by these statutes.

#### b. *Cause of Action III (failure to report independent expenditures) is moot.*

■ Plaintiff's third cause of action— that Triad violated 2 U.S.C. § 434(c) by failing to report independent expenditures made in support of candidates for federal office—is mooted by the Court's finding that Triad was a "political committee." As the FEC acknowledges, § 434(c) applies to non-political committees. *See* 2 U.S.C. § 434(c)(1) ("Statements by other than political committees ... (1) Every person (other than a political committee) ....").

#### c. *Plaintiff has established that Triad and Triad Inc. violated 2 U.S.C. § 441a(f) (Cause of Action IV) (accepting contributions).*

■ Section 441a(a)(1)(C) provides (with certain exceptions not applicable here) that "[n]o person shall make contributions ... to any ... political committee in any calendar year which, in the aggregate, exceed $5,000." 2 U.S.C. § 441a(a)(1)(C). And subsection (f) of this provision provides that "[n]o ... political committee shall knowingly [9] accept any contribution ... in violation of the provisions of this section." *Id.* § 441a(f). It is undisputed that Triad and Triad Inc. received over $5,000 in contributions from Robert Cone in 1996, *see supra*.[10] Triad Stip. ¶¶ 7.1–7.3. The pre-

---

this account statement by characterizing Cone's testimony as indicating "that this document did not accurately reflect his arrangement with [Triad] or Triad Inc," Pl.'s Statement, at 82 (citing Cone Dep. 505–510), it is not so clear to the Court that this characterization is accurate. *See, e.g.,* Cone Dep., at 506:18–22 ("Q. Is this document an accurate reflection of the financial relationship between you and TRIAD? A. I would have to compare this to my records to answer that yes or no."). This testimony is insufficient, without more, to support a finding that Cone made "contributions" to Triad that exceeded $1,000 in 1995.

9. The "knowing" standard used in this provision, "as opposed to a 'knowing and willful'

one, does not require knowledge that one is violating the law, but merely requires an intent to act." *FEC v. John A. Dramesi for Congress Comm.,* 640 F.Supp. 985, 987 (D.N.J.1986) (citations omitted).

10. It is also undisputed that Triad received over $5,000 from Cone and three other sources in 1995, *see* Triad Stip. ¶ 7.1, but, while these sources appear to satisfy the "person" requirement of § 441a(a)(1)(C), the FEC has not provided the Court with sufficient information regarding the receipt of these funds to support a finding that they were "contributions," 2 U.S.C. § 431(8)(A)(i). Nor has the FEC pointed the Court to sufficient evidence to find that Triad violated 11 C.F.R. § 102.5 "by depositing ... excessive contribu-

cise amount of Cone's "contributions" above the threshold $5,000 is unclear on this record (the FEC acknowledges that the defendants were "involved in few activities that were *not* related to the 1996 elections," Pl.'s Mem., at 17 n.6 (emphasis in original)), but is important.

d. *Plaintiff has not established that Triad Inc. violated 2 U.S.C. § 441b (Cause of Action V) (knowing acceptance of corporate contributions).*

■ Section 441b makes it "unlawful for . . . any corporation organized by authority of any law of Congress, to make a contribution or expenditure in connection with any election to any political office, or in connection with any primary election or political convention or caucus held to select candidates for any political office, or for any . . . political committee, or other person knowingly to accept or receive any contribution prohibited by this section . . . ." 2 U.S.C. § 441b(a). The present record is insufficient to support a finding that Triad Inc. accepted prohibited contributions from corporations. Unlike Cone's transfers of funds to Triad Inc., as to which there is record evidence that they were "gifts . . . or deposit[s] of money . . . for the purpose of influencing any election for Federal office," *id.* § 431(8)(A)(i), plaintiff has demonstrated only that Cracker Barrel and Koch Industries transferred funds to Triad Inc. Plaintiff has not established the purpose with which these deposits were made or even pointed to any place in the record that would illuminate the purpose.[11]

e. *Plaintiff has not established that Triad and Triad Inc. violated 2 U.S.C. § 441a(a) (Cause of Action VI) (contributions through other entities and in-kind contributions).*

Generally, "all contributions made by political committees established or financed or maintained or controlled by any corporation . . . or any other person, or by any group of such persons, shall be considered to have been made by a single political committee." 2 U.S.C. § 441a(a)(5). Plaintiff asserts that "[s]ince Malenick established, financed, maintained or controlled [Triad], Triad Inc., [the American Free Enterprise PAC ('AFE')], and [the Citizens Allied for Free Enterprise PAC ('CAFÉ')] . . . [these groups] were not only obligated to disclose their affiliation with each other in reports filed with the Commission, 2 U.S.C. § 433(b)(2), [but] they also were subject to a single aggregate limit on the monetary and in-kind contributions they made to any one candidate or political committee. 2 U.S.C. § 441a(a)(5); 11 C.F.R. § 110.3(a)(1)." Pl.'s Mem., at 25. Plaintiff asserts that Triad and Triad Inc. violated 2 U.S.C. § 441a(a)(1) because the combined financial contributions of AFE and CAFE to fourteen federal candidates, and the in-kind contributions of Triad to thirteen of those candidates exceeded permissible levels.

■ The FEC has demonstrated that AFE was a PAC controlled by Triad and Carolyn Malenick. David Bauer, treasurer of AFE, testified that Malenick was the Director of AFE, *see* Pl.'s Mem., Ex. 92 ("Bauer Dep."), at 16:25, that she made the

---

tions into the same bank accounts as the lawful contributions it received." Pl.'s Mem., at 24.

**11.** Nor has the FEC pointed the Court to sufficient evidence to find that Triad Inc. vio-

lated 11 C.F.R. § 102.5 "when it deposited . . . unlawful finds [from Cracker Barrel and Koch Industries]" into the same bank accounts with funds that were contributed in accordance with statutory restrictions. Pl.'s Mem., at 24.

decisions as to which candidates would be supported, *see id.*, and that he had no discretion as to which candidates would be given AFE contributions. *Id.*, at 27:22–25. Furthermore, to the best of Bauer's knowledge, the "overwhelming majority" of AFE's funds were transferred to it from Triad. *See id.*, at 27:11–21. This evidence is undisputed and is enough to establish that AFE was controlled by Malenick and Triad, so that all contributions made by AFE to federal candidates will be considered to have been made by a single political committee, which includes Triad.

The record will not support a similar finding with regard to the relationship between CAFE and Triad. David Gilliard testified that his company, Gilliard, Blanning & Associates formed CAFE, *see* Pl.'s Mem., Ex. 96 ("Gilliard Dep."), at 17:6, and the FEC has not pointed the Court to enough record evidence to find that Malenick in fact "established or financed or maintained or controlled" CAFE.

Nor is the record evidence sufficient to support a valuation of Triad's "in-kind contributions" to federal candidates, as the FEC itself acknowledges. *See* Pl.'s Mem., at 44 n. 22 ("Triad's actual costs for all [its] in-kind contributions cannot be calculated with certainty on the current record."). The FEC may very well be able to do so and, because AFE's contributions to fourteen federal candidates appear to be at the statutory maximum for, at least, the primary cycle, may be able to easily demonstrate that Triad's "in-kind contributions" caused Triad to exceed the statutory maximum for primary donations. But the Court needs some valuation of these in-kind contributions, and some specifics as to the dates on which they occurred, to make a finding of law in the FEC's favor.

f. *Cause of Action VII (consent to prohibited expenditures and contributions) is moot.*

■ Plaintiff's seventh cause of action—the allegation that Triad Inc. and Carolyn Malenick, as a corporate officer, violated 2 U.S.C. § 441b by making and consenting to prohibited corporate expenditures and contributions in connection with federal elections—was presented to the Court as an alternative cause of action should the Court find Triad Inc. to be a commercial enterprise and not a political committee. As the Court has found Triad Inc. to be a political committee, *see supra*, this cause of action is moot.

### Conclusion, and Relief

As to the first, second and fourth causes of action, no genuine issue of material fact appears of record, and the FEC is entitled to a declaratory judgment as a matter of law. As to the fifth and sixth causes of action, no genuine issues of material fact appears of record, but the record is insufficient to support a judgment for the FEC. The third and seventh causes of action are moot. Penalties will not be imposed by way of summary judgment, nor will the Court grant injunctive relief without further record development. The Clerk will set a status conference, at which the next steps in this litigation (if any) will be identified and scheduled.[12]

---

**12.** On April 18, 2003, Malenick moved for preliminary injunction [# 13], to restrain the FEC from placing on the public record its administrative complaint, designated Matter Under Review 5294 ("MUR 5294"). Malenick attached MUR 5294 to her own cross-

motion for summary judgment, however (Exhibit # 246A–W), thus mooting her own motion for preliminary injunction. Accordingly, this motion is denied.